Muench Photography, Inc. v. McGraw-Hill, Inc. Good morning. May it please the Court, my name is Maurice Harmon of the firm of Harmon, Seidman & Bruss. With me at the bench is Amanda Bruss. The government is here, represented by DOJ attorney Dennis Phan. I'm going to address the covenant condition argument and the 411B portion of the registration argument. Mr. Phan is going to address the 409 registration arguments. I would like to reserve three minutes in rebuttal. We've ceded three minutes to the government. I know you have. Yes, you may do so. Go on. MPI is essentially David and Mark Muench. Everybody says they're Muenches, but they're Muenches. It's a father and son, just a two-person shop. They're highly regarded landscape photographers, using large-format cameras in a photograph for decades, mostly in the West. McGraw claims for all relevant images that as soon as they got their hands on the Muenches photographs, they had permission to use them any way they wanted. The lower court agreed. Muenches claim otherwise. So the question is, with respect to this issue, who is right? The first thing that we would do is look at the agreements between the parties. So it's conceded, I believe, that the agreements contain the preferred pricing agreements. This is the agreement that the Muenches have with Corbis, right? No, this is the agreement that Corbis had with McGraw because Corbis was the licensing agent for the Muenches. And say it again, the Muenches, they gave complete licensing power to Corbis, didn't they? Correct. Okay, go on. We don't have that standing issue here. So what do the agreements say? If we just take a quick look at a representative agreement, because there's several, but in this respect all of the language is the same, not unlike the language in Soam v. Scholastic that this court, another panel, but including Your Honor, Judge Pooler, heard. So what do the agreements say? At A1735 ---- It isn't out yet. That's correct. It has not been announced yet, yes. The decision is pending, yes. Because ---- Go ahead. No, but if a decision in Soam says that this is a valid copyright, doesn't that pretty well settle this case as well? Yes. Yes. So on that, at least on that issue, we have to wait to see what they do because they have precedence. That would make sense, yes. Then there's a question of whether they speak to the agreement that was there and whether there's any difference between that agreement and this one in a way that is significant. Yes. Okay. So I don't want to pound that nail too long. I don't have much time. So if we're ---- I know you don't have much time. Let me ask you a quick question. Yes. You were about to turn to the language of the invoice and the preferred pricing agreement and the various documents in this case. Is it your position that whether a quantity restriction, for example, or a geographic restriction is a covenant or condition depends upon the language of those kinds of documents in a licensing arrangement? Or does scope always mean quantity, geographic limitation, language usage, type, and so on? And I'm asking because we see so many different formulations here, and yet in the copyright licensing arena, particularly where there's an intermediary, and yet scope seems to ask for a kind of principled explanation that may not be tied so tightly to the language of particular documents. Well, our view is that scope of the license means use outside the license limits. And when you have very clear license limits, then it's easy to ascertain whether use is within those limits or outside the scope. But aren't there some aspects of a license which, if not complied with, would constitute a simple breach of contract rather than a copyright violation? Yes. For example, you agree in the contract to pay $100, $200 for an image. You get the license then. Then the corpus issues the license. You don't pay the $200. And that would be a breach of the licensing agreement. But what is different about a breach, the breaches they've made, is that they have used the work outside of the license limits, and we are asking for the court to essentially enforce a copyright-provided protection. That is that you get to control the copying and the number of copies that you make of copyrighted work. That's very different from not paying the price. If the license provided that the licensee could use a photograph 10,000 times, and through carelessness they used it 10,001, your view would be that is a breach of a condition that puts them outside the scope of the license and, in essence, extinguishes the license and makes a copyright violation. Is that right? Not really. And that's the kind of major fundamental mistake made by the courts that have said in every copyright case you have to decide whether the use outside of the limits of the license is a covenant or a condition. Rather, we're saying that the Copyright Act provides the protection. The source of the copyright infringement action is 17-101, USC 101, not some contractual matter that a party has breached. And there's no need, and there rarely is, the case where, in our kind of factual scenario, you would have to determine whether it's a covenant or condition at all in the licensing agreement. You would really say, does the license cover the use made? And, by the way, it's not just 10,001. Typically, they would license for 40,000 to use for 100,000 or 200,000. It's very clear. But wouldn't that also be an issue in the Sohn case? That is, in the Sohn case, they will have to, assuming, for the moment, and I have no idea what they will do, that they held that the copyright was valid, they then would also have to say, is there a separate contractual issue or is the copyright the issue, which is what you are arguing now? Correct. And Judge Chin in Sohn rightly pointed out, I believe in, actually, I don't want to misstate this, in Universal that he wrote, he said, essentially, that in certain instances, if you enforce the contract, a contract right, you would actually be preempted by the Copyright Act because the Copyright Act essentially provides rights above and beyond what a license agreement would provide. And we're not asking for the court to permit us to enforce the contract rights. We're saying that the Copyright Act provides us the ability to control the distribution of the images, the copies of the images, and how copyrighted work is used. So it's a mistake to go down this covenant condition path unless you have the kind of agreement that Graham had, which was this ongoing agreement. Graham had the agreement McGraw wishes they did have and tries to persuade you in this contractual argument that they had. But they didn't. In Graham, you got a copyright to use the work. And the only question, a universal one, one that was ongoing, had no limit in duration or time or use. When there was a nonpayment of the fee that should have been paid under that agreement, Graham brought the action. And the court said, okay, in this scenario, yes, we have to determine, because there's another path to how you can get to copyright infringement in a contract action like that, we have to determine whether the breach was a covenant or a condition. A condition so important that the entire agreement could be rescinded. Take away the agreements here, the invoices. They can't show that the copies they made were licensed at all once they got beyond the limited one-time licenses they had. And in conclusion? Pardon? And in conclusion? Oh, and in conclusion, I will address 411B, which is equally highly important in this case, and just point out that several letters that are in the record at A765, A911, three examples, and A2432 all say we are requesting permission to use more of the images that we licensed originally, just to sort of put the final nail in that coffin of whether this is a covenant, sorry, yeah, whether this is a copyright action or a contract action. And I will address in my other time the 411B issue. Yes. And now we'll hear from the United States. Good morning. May it please the Court. Dennis Vann on behalf of the United States on the registration issue. The 40-year interpretation of the Copyright Office as endorsed by both the Fourth and the Ninth Circuits has been that the owner's registration of a collective work also registers her claims in the contributions to that collective work. The district court here is quite an outlier in saying, both within SDNY and throughout the circuits, in saying that registration of a collective work doesn't also register the owner's claims. Has there ever been anyone really who has taken the position that the district court, NMR, the copyright expert, takes the same position as the government and the other circuits? Originally in Alaska Stock and in the metropolitan regional cases, I think, or at least in Alaska Stock, the district court did. Of course, those cases have all been overturned. I sort of want to highlight how onerous and how difficult the actual burden of putting in Section 409 information into every single type of collective work would be. So just take a quintessential example of an encyclopedia. If you had an encyclopedia as a collective work and you, in fact, owned the entirety of the encyclopedia and all the collective, you know, all the contributions within it, the interpretation of the district court would mean you had to list every title from Hardvark to Zygote and every single author of every single title for the entire encyclopedia to register that single thing. That really can't be what Congress intended in the 1970s. If we were to agree with you, or better, if Sohn were to agree with you because it has precedent, is there anything really left in this case? If you were to agree with us, we would reverse on the, of course, you would then reverse on the copyright registration issue. There would be claims there to interpret and to proceed from thereon. From the standpoint, I don't mean what happens afterwards in the district court. God knows something always happens there. But in terms of our work. In terms of your work, you know, if you were to agree with us, we have nothing left to ask of you. So in that sense, of course, there is nothing left. And I do think there's a few things to highlight in how the court goes about its analysis. If the court were to agree with both the Fourth and the Ninth Circuits in this case, there is a genuine ambiguity in the various registration provisions, which are 408, 409, and 411. What those provisions say is you need to submit your work to the Copyright Office. Your work can have a lot of different types of claims in it. If you submit a CD that's a music album to the Copyright Office, it's not obvious what the scope of your claim is. The scope of the claim might be for the sort of song list. The scope of the claim might be for the recording of the song. It might be for the underlying music composition. All of those things are things that the Copyright Office applies its expertise to and its judgment to. And that's precisely the ambiguity that the Copyright Office routinely does in registering each of these claims. That's partly why the idea that you have to list every single thing just can't be feasible. It's not plausible. You know, it's not a functional way of interpreting the Copyright Act, especially not in terms of the nature of the different types of work. I see that I'm over time, and unless there are further questions, we urge the Court to reverse. Thank you. We'll now hear from McGraw-Hill. Good morning, Your Honors, and may it please the Court. My name is Michael Belkin, and I represent the two defendant appellees in this case. I'm going to refer to them as McGraw-Hill because the facts are largely the same as to both of them. I want to address one question that has sort of reverberated earlier, and that is if you find on the copyright registration issues there anything left. And the Covenant Condition Doctrine decision covers the entirety of the case, whether it's on just the 24 claims that are on appeal currently or the claims that were dismissed as part of the 320 or so breach of contract claims that were settled by the parties before the appeal here. And so this is a contractual dispute about unpaid royalties, just like the Court first addressed in Graham and recently in a carved-out footnote in the Spinelli decision. McGraw-Hill entered into a series of continuous preferred pricing agreements, PPAs, with Corbis, Munch's chosen stock photo licensing agent. And those agreements made it very clear that McGraw-Hill not only had permission to use photos in Corbis's collection, but that it needed to request an invoice and pay on that invoice. And after it paid on that invoice, if its usage was beyond the invoice, that was dealt with by the PPAs expressly and in very detailed terms. For instance, in the 2003 and 2006 PPAs, there's a provision called Invoicing Usage Notification, and that states McGraw-Hill agrees to notify Corbis of the images used on a per-usage basis. To what extent is this contractual issue different from the contractual issue in Sohm? The difference is purely on the record that's before this Court. I can't speak to the full record that was before the Court in the Sohm case. I believe it was a redacted. But if the Sohm Court were to hold that this is a copyright question and not a contractual question, that would bind us as well, wouldn't it? Would that be dispositive in this case? It would only be dispositive if the Court had the opportunity to address the provisions I was going to discuss here, which are the Invoicing Usage Notification provision, which I just read, which makes it clear that Well, unless the decision in Sohm spoke in terms that were broad enough that the particular details of the different contracts wouldn't matter. Correct, Your Honor. That would be the case. However, that would also be contrary to granted. I understand it's contrary to your argument, of course. But whether I agree with your argument or not, I am bound by what that Court which has precedence. Now, that's a very troubling thing for an aggressive fellow like me to be bound. But I am bound, and so I have to figure out what I can do and what I can't do. I wouldn't deign to comment on that. But I would believe that if Sohm was broad enough to basically say there is never an instance where a contract provides a defense to a copyright infringement claim, then, yes, this Court would be bound. But that's precisely the issue here, whether you classify it as a covenant condition doctrine issue or a absolute defense to the copyright infringement claim is irrelevant, because the agreements that all the parties agree exist, provided that McGraw-Hill not only had permission to use the photo from the collection ab initio, and that's the usage notification provision I just read, but then it has a provision right above that on the same page that says that McGraw-Hill could be audited by Corbis, and if the actual usage exceeds the reported usage on the invoice, Corbis reserves the right to bill standard rates. That means that the agreement — But didn't Corbis also have the right to bill ten times the rate in certain circumstances? It did if you look at the boilerplate. But if you look at those agreements, those agreements say that this letter agreement supersedes any boilerplate, as well as New York law. What remedy does the — do the agreements leave Munch with? And that's precisely the point. Corbis stood in Munch's shoes when it licensed those photos to McGraw-Hill, and that gave Munch the right to request the very same royalty that Corbis could have requested from McGraw-Hill at all times, and in certain instances, McGraw-Hill did pay for additional use. However, in this instance, there were a certain number of claims where the actual usage varied from the reported usage, and every single actual use that McGraw-Hill made was covered by the provisions in these preferred pricing agreements that provided a pricing schema for over $250,000 or over $500,000. So are you saying that Munch, then, themselves, they have the right to sue McGraw-Hill for unauthorized use under the contract? They have the right to sue for breach of the contract for the overuse that McGraw-Hill made. And, in fact, they did, and those claims were actually settled in the court below. And so, ultimately, the question here is, and rightly decided by the district court below, did McGraw-Hill have permission to use the photos, and was that overuse by McGraw-Hill in those instances where it occurred covered by the agreements? And the answer to both of those questions is yes. And so, ultimately, while we've discussed the notion of the scope of the agreements, is there ever a usage outside the scope of the license terms that would be so far afield that it would be beyond the scope of the license, the license would have no applicability, and we'd resort to the Copyright Act? Absolutely, Your Honor. And what kind of reason would that be? McGraw-Hill could have made an advertising use of the photo. These contracts don't speak to advertising use. It could have used the photo in its magazine publications. These agreements don't speak to magazine publications, but speak to textbooks. They could have printed the photos in a way that was defamatory or demeaning, and, ultimately, these agreements don't deal with that particular issue. Geographical use as well would be beyond the scope if this was limited to domestic U.S.? If the agreement specifically limited it to the U.S., yes. But, ultimately, these agreements understood the notion that the limits on the photos were purely in number and the language of textbooks in the early agreements, and then, ultimately, it was just purely in the quantity that McGraw-Hill would make. But are you saying that every quantity disagreement is covered by a license? It has to be contractual, even if, for example, just one usage is permitted by the license and then 10,000 are made? In this instance or in general? In general. Oh, in general, absolutely not. If the agreement says one copy or the agreement says for one year, and that's the scope of the agreement, there is no other language that could potentially expand it, and you printed it after the one year or you printed 10 copies instead of just one, that would be a copyright claim. But I understood you to be arguing really relying on the fact that a pricing schedule was published that, in effect, McGraw-Hill has the right to use, according to the pricing schedule, no matter what the license or invoice actually said about the purchased quantities. Your Honor, it's not that the fact that the pricing schedule was published. It's the fact that McGraw-Hill entered into a special agreement, three of them, in fact, in continuous order, and then ultimately renewed the last one into a 2014 agreement that provided very specific terms, beyond just a pricing schedule that's posted on a website. And these agreements, the preferred pricing agreements, specified a detailed relationship between McGraw-Hill and Corbis that specified that McGraw-Hill could make additional copies. If all that was published on a website was a price schedule for a number of copies and these provisions did not exist in the PPAs as here, then absolutely, Your Honor, that would be a copyright infringement claim. But that's not what we have here. And you cannot divorce these preferred pricing agreements from their relationship. Whether you classify them as a defense or you classify them as a covenant condition doctrine analysis, there is not a condition in these agreements that McGraw-Hill breached. MUNCH bore the burden to show that there was a condition precedent and did not do so below. In fact, it ignored that argument entirely. So ultimately, because of these PPAs, McGraw-Hill always had the right to use those photos. And in the instances that it overused them beyond its initial invoice payment, those were covered by these PPAs. I do want to take some time to turn to the 409 issue. Oh, good. Now, I wanted you to respond to the United States. So I want to address really quickly, because I know that they're going to have a reply as well, the 411B argument. We're not arguing that these registrations are invalid. I want to make that very clear. We're arguing that the scope of the registrations, and that's a funny word, scope is being used twice today on both issues. The scope of the registrations applies to the Corbis compilation registration and only the compilation, not the constituent elements. Now, if you look at Section 409, there are three pertinent subsections. Subsection 2 requires that you list the name of the author. Subsection 6 requires you to name the title of the work. It uses it singularly. But then Subsection 9 says, in the instance that it's a compilation and there is no dispute that these six registrations on their face state that they are compilation registrations. They are not collective works like an encyclopedia. They are a database, a catalog of disparate photos authored by over 40 photographers and in instances several thousand photos. I'm sounding like a broken record, but isn't that precisely the issue that is also being raised and so on? Absolutely, Your Honor. In which case, there is no point. You're arguing it to us. I just want to — part of that argument wasn't raised during the oral argument in Soane. It doesn't matter whether it was raised or not. Soane will decide it, and whether it was raised or not, we are bound. So while you're making a good argument that might have been made there, if that is the essence of the issue in Soane, there's no point arguing it to us. I mean, we're very clear on that. I understand, Your Honor. I see my time is up. I appreciate the opportunity today to argue. And we respectfully request the Court affirm the district court on both issues. Thank you, counsel. We'll hear from Mr. Harmon. Thank you. At the risk of getting drawn back into this contract argument, we highly dispute that the judges in the lower court's order properly considered the evidence provided, the contrary evidence provided, that showed that essentially there was not an industry custom or a standard or a special relationship here. And we've set it out in the brief clearly, and it would take too much time to go through each part of it. But the 30B6 witness for Corbis, a guy named Fedoff, disputes that the permissions that were given under the preferred pricing agreements gave carte blanche use and said there was no permission until and unless an invoice request was made and then an invoice and license agreement, those are in the record, there's a number of them, was issued. And if you didn't do that, then you had no license. So we highly dispute. But the lower court took all of, and even quoted from the defendant's brief, verbatim in one instance without attribution, all of the arguments that they made, even though they were asking for summary judgment against us, and considered that evidence to the derogation of all of our other evidence, our evidence. So in this disputed area, there was a fundamental mistake made about considering the evidence of what the agreement was and what it wasn't. So on to 411B. There's a case that was decided by Judge Haidt of the SDNY bench, sitting by designation up in Connecticut, called Lego v. Construction Lock Toys. It's not cited in our brief. It came out after the initial, our opening brief was written. And it's 404 FEDSUP III, 583. It is a decision that will become part of a law school's consideration on IP law, we think, in the future, as it pertains to many matters, but especially 411B. So 411B, enacted in 2008, the IP Pro, the Pro IP Act, as it was called, says before you can invalidate a registration, after a certificate is issued, like certificates issued in this case for every single claim we've made, you must. But doesn't that apply only on a matter of inaccuracy, as against a matter of the kind of argument that is made here about the multiple registration or not? That is, the 411 seems to me to deal, that requires taking, going to the copyright people, wherever the application was inaccurate. It's not this situation, is it? Yes, it is. And Judge Haight talks specifically about that. I understand. And he's a district judge.  You're not bound, but it's very persuasive. No, we're not bound at all. I mean, he's my neighbor in New Haven, and I love him. I suspected so. But it's worth a read, because he's a good judge, well-respected. And what he says for the first time clearly here, we think, is that material omissions as well as technical inaccuracies require, it's mandatory for the lower court to consult with the Copyright Office if it is shown that that omission, just like the addition of something, he cites cases that shows an omission. Here they say, we didn't put in all the names of each photographer. That requires, and the statute is clear, requires a submission to the Copyright Office if you show that that omission was knowing, and that the Copyright Office would have refused the registration if those names were included. It's a crazy kind of analysis here. But, of course, the Copyright Office set up the program. It worked in conjunction with Corbis and others in a trade organization. So they're never going to say the system we set up and established and told you would convey registration to the component parts of a database, which is a collection here, would be effective. So the Copyright Office said that would be effective. Do it right. They did it right. And let's step back from this for a moment. You've got all these photographers who are relying upon what the Copyright Office says about registration, and they're asking for years and years, and they're asking you now to set all that aside, invalidate tens of thousands of registrations that affect hundreds of thousands of photographs, and would ultimately let McGraw escape liability for a whole lot of infringements. And, finally, let me just say this, that the 30B6 witness for McGraw said they didn't even have a system in place to track the quantities of the photographs that they used. So if they supposedly had this big system where they would notify after permission that they got to use these photographs, why wasn't there a system in place to count the images so they could tell when they went over the 40,000-copy limit and then be able to pay for those uses? That belies this whole approach of McGraw, kind of made up in litigation, we believe, with all due respect, to get them out of this jam they're in. And we ask the Court to look at the big picture in reversing the district court in this case. Thank you, Counsel. Thank you all. Very good argument.